DA 08-0128

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 74N

IN THE MATTER OF
L.K.,

        Respondent and Appellant.

APPEAL FROM:     District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DI-07-002.3
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Robin A. Meguire; meguirelaw.com, Great Falls, Montana

        For Appellee:

        Hon. Steve Bullock, Montana Attorney General; Tammy K Plubell,
Assistant Attorney General, Helena, Montana

        Joe Coble, Teton County Attorney; Choteau, Montana

Submitted on Briefs: November 19, 2008

Decided: March 10, 2009

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The State of Montana filed a petition for commitment and detention of L.K. As a result, L.K. was detained at the State Hospital at Warm Springs (hereinafter "Warm Springs") pending her commitment hearing. Pursuant to § 53-21-140(2), MCA, L.K. attended her commitment hearing via video-conference from Warm Springs. The Professional Person ("Fischer") was in the same room with L.K. when the hearing began and was able to observe her behavior. During the hearing, L.K. became disruptive, and the District Court ordered that L.K.'s end of the video-conference line be muted. As the hearing continued, L.K. became agitated, and was taken back to her room because her behavior was compromising her mental state and the safety of the staff and other patients. The remainder of the hearing was conducted in her absence. When the District Court became aware that L.K. had been permanently removed from the video-conference area, the court discussed with L.K.'s attorney, Fischer, and the court-appointed Friend ("Francetich") the possibility that L.K. could waive her right to be present pursuant to § 53-21-119(2), MCA. L.K.'s counsel ultimately concurred with Fischer and Francetich

2

that her continued presence at the hearing would adversely affect her mental condition, and waived her right to be present on that basis.

¶3    Issues on appeal:

¶4    1.  Whether L.K. was committed to the State Hospital in violation of her due process rights when she was precluded from being present at the hearing?

¶5    2.  Whether L.K. was denied effective assistance of counsel?

¶6    3.  Whether the District Court erred in authorizing involuntary medication?

¶7    In a previous decision involving the same individual, we held that where a person is being disruptive while attending the involuntary commitment hearing via video-conference, it is appropriate for the District Court to order that the individual's communication device be muted so that proceedings can continue in an orderly fashion. *In re L.K.*, 2008 MT 169, ¶¶ 32, 33, 343 Mont. 366, 184 P.3d 353.  In that proceeding, "L.K. could hear each witness's testimony, observe the entire proceeding, and consult with her attorney at any time." *L.K.*, ¶ 33.

¶8    In the present matter, L.K. argues that the court improperly allowed her to be completely removed from the hearing, which was ultimately conducted in her absence. L.K. also contends that her attorney's waiver of her presence was not effective since, contrary to § 53-21-119(2), MCA, there were no specific findings that "(a) the presence of the respondent at the hearing would be likely to seriously adversely affect [her] mental condition; and (b) an alternative location for the hearing in surroundings familiar to the respondent would not prevent such adverse effects on [her] mental condition."

3

¶9 L.K. also challenges the order that she be involuntarily medicated for the reason that the District Court did not make a specific finding as to "the reason involuntary medication was chosen from among other alternatives." Section 53-21-127(8)(h), MCA.

¶10 This Court has previously addressed the issue of the findings required to support an order for involuntary medication. *In re S.C.*, 2000 MT 370, 303 Mont. 444, 15 P.3d 861. In *S.C.*, S.C. alleged the district court failed to make a specific finding stating the reason involuntary medication was chosen among other alternatives. This Court concluded that it must look at the district court's findings as a whole, and in so doing stated: "[a]lthough the District Court did not, in one distinct finding of fact, specifically state why involuntary mediation was chosen, it is abundantly clear from the court's other detailed findings of fact why the District Court concluded that involuntary medication was the least restrictive and most appropriate alternative." *S.C.*, ¶ 14.

¶11 This Court also observed in *S.C.* our adoption of the doctrine of implied findings for the purpose of reviewing findings of fact. *S.C.*, ¶ 14, citing *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985). The doctrine of implied findings provides that "where the findings are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence." *S.C.*, ¶ 14, quoting *Interstate Brands*, 218 Mont. at 384, 708 P.2d at 576. In the instant case, the evidence, combined with the District Court's specific findings of fact, provide a clear rationale for ordering involuntary medication and for concluding by necessary implication that L.K.'s continued presence at the hearing

4

would seriously adversely affect her mental condition and that another alternate location would not prevent such adverse effects.

¶12  Finally, L.K. contends that her counsel was ineffective, essentially arguing that counsel did not vigorously advocate on her behalf. We disagree. The record indicates that counsel cross examined witnesses, including Fischer, only consented to her removal after Fischer and Francetich concurred that her continue presence would likely cause her mental condition to further deteriorate. Counsel nonetheless advocated the State had not met its burden and that L.K. should be released or effectively treated in the community. Counsel was not ineffective.

¶13  We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions.

¶14  We affirm the judgment of the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

5