No. 00-158

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 370

303 Mont. 444

15 P. 3d 861

IN THE MATTER OF THE MENTAL

HEALTH OF S.C.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Peter Bovingdon, Assistant Public Defender, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

Mike McGrath, Lewis and Clark County Attorney; Mike

Menehan, Deputy County Attorney, Helena, Montana

Submitted on Briefs: October 12, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 This is an appeal pursuant to § 53-21-131, MCA, from an order of commitment issued by the First Judicial District Court, Lewis and Clark County. We affirm the decision of the District Court.

¶2 On November 10, 1999, the District Court ordered that S.C. be committed to Golden Triangle Community Mental Health Center and that she agree to take medication as prescribed by professionals at that facility.

¶3 There is no dispute as to the facts. S.C. suffers from paranoid-type schizophrenia. Her mental disorder has resulted in acts, omissions or behaviors which endanger her life or health in that she refuses to admit that she is unable to care for herself. On two occasions she was observed throwing her medication in the garbage can. S.C. has a history of treatment non-compliance and medication non-compliance. She presents with paranoia, suspiciousness and anger and her thoughts appear disorganized. S.C.'s mental disorder is treatable with a reasonable prospect of success but has resulted in her refusing or being unable to consent to voluntary admission for treatment. She continues to state that she does not have schizophrenia or need medication. She indicates that she wishes to live independently, yet she has refused treatment which would allow independent living.

¶4 The District Court further found that if S.C.'s disorder goes untreated, it will predictably result in the deterioration of her mental condition to the point that she will be unable to provide for her own basic health and safety needs, thereby placing herself at risk in a community where she does not use support services.

¶5 The District Court found that S.C. is in need of psychiatric treatment in a minimally structured environment and that medication is necessary to facilitate effective treatment. The District Court investigated alternative treatments but found that they would not meet the treatment needs of S.C. nor be in her best interests.

¶6 Based on the above findings of fact, the District Court ordered that S.C.

shall be committed to Golden Triangle Community Mental Health Center, Jeff Sturm, Clinic Director, Helena, Montana, for a period of 90 days for care, treatment and evaluation of the respondent's mental health needs, and the respondent shall follow the out-patient plan developed by Golden Triangle Community Mental Health Center, which shall include the following: 1. Respondent will agree to take medication as prescribed and will receive medication monitoring as recommended by professionals at Golden Triangle Community Mental Health Center . . . .

¶7 The question raised by S.C. on appeal is whether the District Court erred in ordering that she agree to take medication as prescribed absent findings that she was incompetent and that involuntary medication was necessary. S.C. contends that the District Court's order violated her common law, constitutional and statutory rights to refuse medication.

¶8 In reviewing the sufficiency of the evidence in a civil commitment proceeding, this Court views the evidence in a light most favorable to the prevailing party. In re Mental Health of R.J.W. (1987), 226 Mont. 419, 423, 736 P.2d 110, 112. We will not disturb the district court's findings on appeal unless they are shown to be clearly erroneous. In re G.S. (1985), 215 Mont. 384, 390, 698 P.2d 406, 410. In reviewing conclusions of law, the Court determines whether the decision below was correct or not. In re Mental Health of L. C.B. (1992), 253 Mont. 1, 5, 830 P.2d 1299, 1302.

Discussion

¶9 S.C. contends that the District Court's order violated her common law right to refuse medication. The State contends that there is no common law in situations where the law is declared by statute. Section 1-1-108, MCA. With regard to the State's power to treat the mentally ill, the legislature has specifically established the law in Chapter 21 of Title 53, MCA. If, pursuant to this Chapter, the State meets all procedural prerequisites and restrictions, then a court may order that a mentally ill person be involuntarily medicated. Section 53-21-127(2)(c), MCA. Since the legislature has, through statutory enactment, clearly declared the law as to involuntary medication, we agree with the State that there is no common law right to refuse medication.

¶10 S.C. next contends that in ordering involuntary medication, the District Court deprived her of due process of law under the United States and Montana Constitutions and violated her right of privacy under the Montana Constitution. Her constitutional arguments are premised on the assumption that the District Court did not find her to be *incompetent*

to give her informed consent. The Montana statutes on the treatment of the seriously mentally ill, however, do not speak in terms of "competency." Rather, the statutory scheme is couched in terms of "mental disorder," a term which is defined as "any organic, mental or emotional impairment that has substantial adverse effects on an individual's cognitive or violitional functions." Section 53-21-103(7), MCA. Here, the District Court, following the statutory scheme of Title 53, Chapter 21, MCA, determined that S.C. has a mental disorder (paranoid- type schizophrenia) which renders her unable to consent to voluntary admission for treatment. By definition, S.C. thus has an impairment that has a substantial adverse effect on her cognitive and volitional functions. Accordingly, S.C.'s premise that she was not found to be incompetent is a false premise. S.C. fails to place her constitutional arguments in the context of the Montana commitment statutes and she does not specifically argue that the commitment statutes are either unconstitutional on their face or as applied to her. We find no merit to the constitutional arguments as presented.

¶11 Finally, S.C. contends that the District Court failed to satisfy the statutory prerequisites to ordering involuntary medication. In particular, S.C. argues that, before ordering involuntary medication, a district court must make a separate finding that involuntary medication is necessary, § 53-21-127(2)(c), MCA, and why it is necessary. Section 53-21-127(2)(e)(vii), MCA. S.C. posits that although the District Court found that medication was necessary, it did not find that *involuntary* medication was necessary.

¶12 Before ordering involuntary medication, a District Court must address four statutory criteria. First it must determine whether the person in question is suffering from a mental disorder and requires commitment and, if so, hold a post-trial disposition hearing. Section 53-21-127(2)(a) MCA. Then upon the conclusion of the post-trial disposition hearing, it must choose among the least restrictive treatment alternatives necessary to protect the individual and the public and permit effective treatment. Section 53-21-127(2)(c), MCA. In selecting the least restrictive treatment, the court can choose between institutionalization, non-institutional care, ordering outpatient therapy or making "some other appropriate order for treatment." Sections 53-21-127(2)(a)(i) through (v), MCA. Before choosing involuntary medication, the court must find that it is necessary to protect the person or the public or to facilitate effective treatment. Section 53-21-127(2)(c), MCA. Finally, it must make a finding of fact that includes the reason involuntary medication was chosen from among the other alternatives. Section 53-21-127(2)(e)(vii), MCA. It is this final requirement that is the focus of S.C.'s appeal. She contends that the District Court failed to make a specific finding stating the reason involuntary medication was chosen from among other alternatives.

¶13 The State counters that neither § 53-21-127(2)(e), MCA, nor any other provision of the commitment statute expressly requires that a district court declare, in a distinct and explicit statement, its reasons for selecting involuntary medication. Rather, the State contends that we should look to the court's findings as a whole. We agree.

¶14 In its findings of fact, the District Court found that on two occasions S.C. was observed throwing her medication in the garbage can; she has a history of treatment and medication non-compliance; she continues to state that she does not have a problem and does not need medication; and "[i]f [S.C.'s] mental disorder goes untreated, there will be a predictable result in the deterioration of [S.C.'s] mental condition to the point at which [she] will be unable to provide for her own basic needs of health and safety, thereby placing her at risk in a community where she doesn't use support services." Although the District Court did not, in one distinct finding of fact, specifically state why involuntary medication was chosen, it is abundantly clear from the court's other detailed findings of fact why the District Court concluded that involuntary medication was the least restrictive and most appropriate alternative. Furthermore, we have adopted the doctrine of implied findings for purposes of reviewing findings of fact. Interstate Brands Corp. v. Cannon (1985), 218 Mont. 380, 384, 708 P.2d 573, 576. That doctrine provides that where the "findings are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence." *Interstate Brands*, 218 Mont. at 384, 708 P.2d at 576. Here, the District Court's specific findings provide a clear rationale for ordering involuntary medication.

¶15 We hold that the District Court, in ordering that S.C. "agree to take medication as prescribed," first complied with the requirements that it find that involuntary medication is necessary to protect the person or the public or to facilitate treatment, § 53-21-127(2)(c), MCA; and that it set forth the reason involuntary medication was chosen from among other alternatives. Section 53-21-127(2)(e)(vii), MCA.

¶16 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER