FILED

December 2 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0367

DA 14-0367

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 338

IN THE MATTER OF:

M.P.-L.,

     Respondent and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DI-14-12
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Lisa S. Korchinski, Assistant Appellate Defender, Helena, Montana

     For Appellee:

          Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

          Eileen Joyce, Silver Bow County Attorney, Mike Clague, Deputy County Attorney, Butte, Montana

Submitted on Briefs:  August 12, 2015
Decided:  December 2, 2015

Filed:

                              Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 M.P.-L. appeals from the June 2, 2014 Order and the June 5, 2014 Findings of Fact, Conclusions of Law, and Order of the Montana Second Judicial District, Silver Bow County, committing her to the Montana State Hospital.

## ISSUES

¶2 Appellant raises several issues on appeal, which we address as follows:

*1. Was the District Court's June 2, 2014 Order of Commitment deficient because it failed to provide a detailed statement of the facts upon which it found M.P.-L. to be suffering from a mental disorder requiring commitment?*

*2. Was the District Court's June 5, 2014 Findings of Fact, Conclusions of Law, and Order procedurally invalid?*

*3. Did the District Court's June 2, 2014 Order, combined with the June 5, 2014 Order provide a sufficiently detailed statement of the facts finding M.P.-L. to be suffering from a mental disorder requiring commitment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 M.P.-L. has been diagnosed with Post Traumatic Stress Disorder (PTSD) and borderline personality disorder. She also suffers from anxiety and panic attacks. In May of 2014, M.P.-L. suffered a series of events triggered by her inability to acquire her depression/anxiety medication caused by issues with her Medicaid benefits. As a result, she sought care at her regularly scheduled counseling appointment during which she agreed to go to the emergency room due to the severity of her mental health symptoms. The mental health evaluation taken at the E.R. made several findings: M.P.-L. expressed suicidal "threats and ideation"; reported a history of physical and sexual abuse; and reported arthritis and pain.

2

¶4     As a result of this incident, M.P.-L. was voluntarily admitted on May 27, 2014, to the Hays Morris House, a crisis stabilization facility for persons in mental health crisis. M.P.-L. was evaluated at Hays Morris House on May 29, 2014, by Michael G. Sawicki (Sawicki), a licensed clinical social worker and mental health professional. Sawicki determined that she continued to decompensate emotionally and she had made multiple suicidal threats. According to Sawicki, she was "grossly unpredictable and impulsive" with moods shifting from full orientation to rage and sadness. Sawicki reported that M.P.-L. was a very high suicide risk and he was unable to accurately count her suicide gestures or attempts because there were so many. The following day, May 30, 2014, the State petitioned for the involuntary commitment of M.P.-L., stating that she suffered a mental disorder that required treatment, and if left untreated, she posed an "unreasonable" risk of danger to herself or others.

¶5     An initial hearing was held that day, and M.P.-L. appeared by videoconference with counsel. On June 2, 2014, a second hearing was held, and Sawicki met with M.P.-L. prior to the hearing to assess her condition. At the hearing, Sawicki testified that M.P.-L. was suffering from "borderline personality disorder and pain disorder with psychological and medical factors" and that she made "three very significant verbal suicide threats" while at Hays Morris House. Sawicki also testified that prior to the hearing, she denied to Sawicki she was suicidal; he stated this was not reasonable behavior, because it was too recent in time for her to suddenly feel better given the severity of her prior mental and emotional condition. Sawicki concluded M.P.-L.'s suicide risk remained "significantly high."

3

¶6 M.P.-L. testified at the hearing that she was able to get back on her medication and was in a much better place compared to the prior week. She testified she would see her counselor that day at her regularly scheduled appointment and that she would like to go home to be with family: her father, two children, and brother. M.P.-L. also testified that she had support from her friends. When the District Court questioned M.P.-L. about her suicidal comments the prior week, she testified that the behavior came from lack of proper medication. M.P.-L. also declined voluntary placement at Hays Morris House because she did not believe she would receive adequate therapy there.

¶7 Sawicki responded that because M.P.-L. declined voluntary commitment, and because he could not predict whether M.P.-L. would follow through with her own therapy, the Montana State Hospital (MSH) was the only remaining option. At the conclusion of testimony, the District Court determined that M.P.-L. should be involuntarily committed to the MSH for a period not to exceed 90 days. The District Court issued a two-page Order of Commitment on June 2, 2014 ("June 2nd Order"), summarizing the commitment. M.P.-L., through counsel, informed the District Court the next day that she would appeal. On June 5, 2014, the District Court filed Findings of Fact, Conclusions of Law, and Order ("June 5th Order") to support the June 2, 2014 Order previously entered in the case.

**STANDARD OF REVIEW**

¶8 We review a District Court's civil commitment order to determine whether the findings of fact are clearly erroneous and its conclusions of law are correct. *In re Mental Health of L.K.-S.*, 2011 MT 21, ¶ 14, 359 Mont. 191, 247 P.3d 1100 (citing *In the Matter*

4

*of T.S.D.*, 2005 MT 35, ¶ 13, 326 Mont. 82, 107 P.3d 481). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the District Court misapprehended the effect of the evidence, or if, after a review of the entire record, we are left with the definite and firm conviction that a mistake was made. *L.K.-S.*, ¶ 14. Whether a district court's findings of fact meet the statutory requirements is a question of law that we review for correctness. *In re L.L.A.*, 2011 MT 285, ¶ 7, 362 Mont. 464, 267 P.3d 1 (citing *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 5, 339 Mont. 107, 168 P.3d 662).

## DISCUSSION

¶9      *1. Was the District Court's June 2, 2014 Order of Commitment deficient because it failed to provide a detailed statement of the facts upon which it found M.P.-L. to be suffering from a mental disorder requiring commitment?*

¶10      M.P.-L. argues that the District Court's June 2nd Order contained no findings of fact and fails to meet the statutory requirement of a "detailed statement of the facts" under § 53-21-127(8)(a), MCA. The State acknowledges that the District Court's order of commitment did not include a detailed statement of the facts as required by § 53-21-127(8)(a), MCA.

¶11      We agree with the parties the June 2nd Order is deficient. The order does not include findings reflecting the basis of the court's determination and fails to meet the mandatory statutory requirements. While the transcripts reflect the court's analysis of the factors surrounding M.P.-L.'s commitment, the order only contains conclusory statements about the statutory criteria with no indication of the facts showing reasoning for the commitment, which is a failure of the order's purpose. Due to the lack of a

5

detailed statement of the facts, we conclude that the June 2nd Order is deficient and failed to comply with § 53-21-127(8)(a), MCA.

¶12  *2. Was the District Court's June 5, 2014 Findings of Fact, Conclusions of Law, and Order procedurally invalid?*

¶13  M.P.-L. argues that the June 5th Order is not authorized under Montana's statutory law on involuntary commitments and asks the Court to strike the Order from the record. The State contends the June 5th Order is not prohibited by the statute and that the order fixed the defects because it included a detailed statement of the facts in compliance with § 53-21-127(8)(a), MCA.

¶14  Section 53-21-127(8)(a), MCA, does not contain language that precludes the District Court from issuing a second order meeting statutory criteria. The statute requires a district court to provide a detailed statement of the facts giving the basis for commitment but does not specify that a second order is prohibited. While the best practice and typical procedure of the district courts is to declare and describe the supporting facts directly in a commitment order, there is no specific language in the statute barring a second order. We do not find procedural error in the issuance of the June 5th Order.

¶15  *3. Did the District Court's June 2, 2014 Order, combined with the June 5, 2014 Order provide a sufficiently detailed statement of the facts finding M.P.-L. to be suffering from a mental disorder requiring commitment?*

¶16  M.P.-L. argues that the June 5th Order was still deficient because its contents provide only basic conclusory statements regarding M.P.-L.'s condition that were not sufficient to support her involuntary commitment. M.P.-L. also asserts that because the

6

June 5th Order was filed three days late, the officers transporting M.P.-L., and the MSH were not adequately apprised of M.P.-L.'s condition, causing substantial prejudice to M.P.-L. The State responds that the detailed statement in the June 5th Order meets the § 53-21-127(8)(a), MCA, requirement for commitment. The State further argues that under *In re O.R.B.*, the June 2nd error was harmless, lacks substantial prejudice, and does not warrant reversal. *In re O.R.B.*, 2008 MT 301, ¶ 30, 345 Mont. 516, 191 P.3d 482 (citations omitted) (an error must cause substantial prejudice to warrant reversal).

¶17    Sections 53-21-126 and 127, MCA, provide the procedural requirements for an involuntary commitment. On a petition for involuntary commitment the court must first determine whether the respondent is suffering from a mental disorder. If the respondent is suffering from a mental disorder, the court then considers whether commitment is necessary based on the factors found in § 53-21-126(1), MCA:

> (a) whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;
> (b) whether the respondent has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others;
> (c) whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; and
> (d) whether the respondent's mental disorder, as demonstrated by the respondent's recent acts or omissions, will, if untreated, predictably result in deterioration of respondent's mental condition to the point at which the respondent will become a danger to self or to others or will be unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety.

If the court concludes under the above criteria that commitment is required, then § 53-21-127(8)(a), MCA, mandates the court's order must contain "a detailed statement

7

of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment."

¶18 The District Court provided four findings as part of the "detailed findings" necessary to comply with § 53-21-127(8)(a), MCA:

1. The Respondent, M.P.-L. is a resident of Silver Bow County, Montana.
2. Mike Sawicki, LCSW, the professional person who conducted an evaluation of the Respondent, testified that in his opinion and to a reasonable medical certainty the Respondent suffers from a mental disorder requiring commitment. Specifically, Sawicki testified that the Respondent suffers from borderline Pain Disorder. Sawicki testified that the respondent had made three suicide threats and she continued to be a risk for suicide. Sawicki testified that the Respondent, if left untreated, presently constitutes a danger to herself. Sawicki testified that in his opinion that without intervention the Respondent would continue to be a risk of self harm.
3. Sawicki testified that the Respondent was not capable of cooperating with voluntary treatment in her present mental condition. Accordingly, involuntary commitment of Respondent to Montana State Hospital is the least restrictive treatment alternative available to effectively treat and protect the Respondent as it is the only place that can detain her safely treated.
4. Sawicki also testified that the Respondent, in her present mental condition, is capable of making informed decisions about appropriate medication to treat her mental disorder. Additionally, the Respondent's mental and physical condition is likely to deteriorate without appropriate medication.

¶19 The District Court included information in the findings reflecting M.P.-L.'s circumstances leading to the court's conclusions under § 53-21-126(1), MCA. The evidence included conclusions from testimony by Sawicki that M.P.-L.: suffered from mental illness; made three suicide threats; and continued to be a threat to herself. The court found that M.P.-L. was not capable of cooperating with voluntary treatment and would not likely be able to protect her own life or health. Due to her unwillingness to report voluntarily, the District Court found that involuntary commitment was the least

8

restrictive alternative to treat and protect M.P.-L.  The court also briefly reviewed the potential alternatives and provided some reasoning for ruling them out.

¶20 While the District Court's written findings are bare-boned, the court provides sufficient reasoning to justify the commitment.  This includes reliance on the District Court's June 2nd hearing findings.  We have concluded in commitment cases that a court's hearing findings support the written findings in a sufficiency determination under § 53-21-127(8), MCA.  *In re S.M.*, 2014 MT 309, ¶ 27, 377 Mont. 133, 339 P.3d 23 (citing *O.R.B.*, ¶ 19).  In that case we determined that under the doctrine of implied findings, "we may consult hearing transcripts in addition to the written findings" to determine sufficiency.  *S.M.*, ¶ 28.  The implied findings doctrine holds that where "findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence."  *S.M.*, ¶ 28 (citing *In re Mental Health of S.C.*, 2000 MT 370, ¶ 15, 303 Mont. 444, 15 P.3d 861).  Under this analysis we conclude the District Court's June 2nd hearing findings add support to the June 5th written order and the court's determination regarding M.P.-L.

¶21 The District Court properly found that M.P.-L. was a threat to herself.  Taking § 53-21-126(1)(c), MCA, in conjunction with § 53-21-126(2), MCA, a district court must possess evidence of "[i]mminent threat of self-inflicted injury . . . sufficiently recent in time as to be material and relevant to the respondent's present condition."  Section 53-21-126(2), MCA.  The court made such findings and included them in the detailed statement of fact.  M.P.-L. made threats to herself, and witnesses testified that because of her mental disorder she is an imminent threat to herself by self-inflicted injury.  There is

9

no dispute regarding the evidence used by the District Court to make this determination as well as no question that M.P.-L. was suffering the difficulties described in the findings and record.

¶22 Thus, the District Court provided proper facts and information the court used to determine that M.P.-L. was suffering a mental disorder requiring commitment. These findings provide a sufficient statement of facts to support the imminent threat of self-injury criteria found in § 53-21-126(1)(c), MCA. The District Court's conclusions are based on the recommendations of the professional person providing testimony in the case, the transcripts, and the record. Viewed as a whole, the aggregate of the court's two orders is bare-boned, yet because the findings are supported by the evidence and the record, we are not left with a conviction that a mistake was made in this case. *L.K.-S.*, ¶ 14. We conclude that the District Court's findings are supported by substantial evidence, sufficient to support the decision to commit M.P.-L. to the MSH.

¶23 Finally, we do not see that M.P.-L. was substantially prejudiced by the June 2nd Order as there is no evidence that M.P.-L.'s condition was not known to those transporting or receiving her at the MSH. No evidence in this case reflects that M.P.-L. was harmed, wrongly held, or injured as a result of the defective order. We conclude the errors in the June 2nd Order were harmless. A harmless error does not require reversal of a district court judgment. *O.R.B.*, ¶ 30.

¶24 On a final note, this Court recognizes the stress, pain, and difficulty caused by an involuntary commitment. Accordingly, we reiterate that the statutory requirements of an involuntary commitment must be strictly adhered to by the district courts, including the

10

requirement of detailed findings under § 53-21-127(8)(a), MCA, in order to justify appropriate decisions and to follow proper procedure. This Court stresses once again that adherence to these laws is of "critical importance" due to the "calamitous" effects on a respondent's loss of liberty and potentially damaged reputation caused by a commitment. *L.L.A.*, ¶ 9.

## CONCLUSION

¶25 We conclude that the June 2nd Order is deficient and failed to comply with § 53-21-127(8)(a), MCA, because it did not contain a detailed statement of the facts upon which the court found respondent to be suffering from a mental disorder requiring commitment. The District Court's June 5th Order was not procedurally invalid as there is no specific language in the statute barring a second order to provide additional findings. The District Court's findings in the June 5th Order are supported by substantial evidence, sufficient to support the decision to commit M.P.-L. to the MSH. Finally, the defective June 2nd Order did not prejudice M.P.-L. as no harm was caused by the mistake. We conclude the errors in the June 2nd Order were harmless.

¶26 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER

11

Justice Laurie McKinnon specially concurs.

¶27 While I agree with the Court's ultimate resolution, I am confused as to how we get there. It appears that we subject both orders to scrutiny; find the June 2, 2014 order deficient, Opinion, ¶ 11; apply harmless error review to the June 2, 2014 order, Opinion, ¶ 23, and then consider a combination of the previously declared deficient June 2, 2014 order with the June 5, 2014 order, Opinion, ¶ 20. Apart from the analysis being unsound, it is confusing and unnecessary.

¶28 Assuming that the District Court intended the June 2, 2014 order to constitute its finds of fact and conclusions of law and was not merely a mechanism to move the Respondent to Warm Springs pending a subsequent, more detailed order, I agree with the State's concession that the June 2, 2014 order of commitment was deficient. This should be the end of the discussion concerning the June 2, 2014 order. While it may be helpful to state that issuance of the June 2, 2014 order was perhaps procedurally irregular, our analysis should focus on whether the June 5, 2014 order met the statutory requirements of § 53-21-127 (8)(a), MCA.

¶29 A review of the District Court's June 5, 2014 order demonstrates that the District Court provided sufficient, although bare-boned, factual findings and reasoning to support the order of commitment. Unfortunately, we must resort to the doctrine of implied findings to reach this conclusion. *S.M.*, ¶¶ 27-28. Nevertheless, the District Court's findings and reasoning are supported by the evidence produced during the commitment hearing.

¶30  I would affirm the District Court's order of commitment on this rationale only.


/S/ LAURIE McKINNON