FILED

March 22 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0077

DA 15-0077

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 70

IN THE MATTER OF:

S.G.R.,

      Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Tenth Judicial District, In and For the County of Fergus, Cause No. DI-14-28 Honorable Jon A. Oldenburg, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Amy Poehling Eddy, The Law Offices of Amy Eddy, PLLC, Kalispell, Montana

            Nicholas K. Brooke, Smith & Stephens, P.C., Missoula, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

            Thomas P. Meissner, Fergus County Attorney, Craig R. Buehler, Special Deputy County Attorney, Lewistown, Montana

Submitted on Briefs: February 24, 2016

Decided: March 22, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      S.G.R. appeals the order of the Tenth Judicial District Court, Fergus County, extending his civil commitment to the Montana Mental Health Nursing Care Center (Nursing Care Center) for a period not to exceed one year.

¶2      S.G.R. raises two issues on appeal, which we combine and restate as follows:

> *Whether the District Court's order met the statutory requirements for extending commitment under §§ 53-21-127 and -128, MCA.*

¶3      We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4      S.G.R is a seventy-six year old man with a lengthy history of severe alcoholism, mental health issues, and multiple periods of institutionalization.  He relies on a wheelchair for mobility.  Prior to his initial commitment in 2014, S.G.R. had established a pattern of receiving his Social Security check on the first of each month, staying at a hotel, and drinking until his money ran out.  He would then check in to the Community Crisis Center in Billings for the remainder of the month.  While at the Community Crisis Center in early 2014, S.G.R. suffered a seizure as a result of alcohol withdrawal and was hospitalized.  During his hospitalization, S.G.R. was diagnosed with dementia secondary to chronic alcoholism, which prompted the State to file a petition for involuntary commitment.

2

¶5 On February 7, 2014, S.G.R. consented to his initial commitment to the Montana State Hospital for a period not to exceed three months. Before the initial commitment expired, the State filed a petition for extension of commitment. On May 9, 2014, S.G.R.'s commitment was extended without objection for a period not to exceed six months. He was transferred to the Nursing Care Center in June 2014. Upon admission to the Nursing Care Center, S.G.R. was diagnosed with depression and alcohol-induced dementia.

¶6 On October 23, 2014, Susan Stevens, a psychology specialist at the Nursing Care Center, petitioned the District Court to extend S.G.R.'s commitment based on her opinion that S.G.R. was in need of further evaluation and treatment and that S.G.R. required detention "to prevent injury to [himself] or to others." The next day, the District Court appointed a "friend" and legal counsel for S.G.R.

¶7 On December 16, 2014, the District Court held a contested hearing at which S.G.R. was present and represented by counsel. Witnesses presented testimony that S.G.R. had received inpatient alcohol treatment numerous times over the years in several different states; had been to the Galen Chemical Dependency Unit at least seven times; had been admitted four times to the Montana State Hospital; and was presenting a "consistent pattern" of staying sober for a few months, then starting to drink, isolating himself and quitting his medications, leading to paranoid delusions and significant seizures that recently had nearly killed him. While at the Nursing Care Center, S.G.R. had attempted three times to elope from the facility (leave without permission). On one

3

elopement attempt, S.G.R. tried to take his wheelchair down a significant decline, over an embankment, toward several frog ponds. During the last elopement attempt, S.G.R. rolled his wheelchair into traffic attempting to flag down a ride. Stevens testified that in all three cases, especially the last incident, S.G.R. "presented himself in a very dangerous situation." Steve Cummings, another member of the Nursing Care Center staff, testified that S.G.R. was "pretty aggressive, very verbally abusive," when staff attempted to bring him back to the facility on the most recent occasion, and that they had to summon assistance from law enforcement.

¶8 Stevens testified that S.G.R. has "extremely poor" insight into his alcoholism, denying it until the day of the hearing, and has no insight into his dementia "and will deny it." With his dementia, Stevens advised the court, S.G.R. lacked ability to understand his circumstances or needs, and had a disregard for his safety. Stevens concluded that S.G.R.

> presents as a danger to himself because of his dementia which is [ex]acerbated by his alcoholism, which he shows a consistent pattern of relapsing and drinking the alcohol which then aggravates his mental health symptoms to the point that either a) he nearly dies or [b)] he becomes paranoid and suicidal. I also believe he does not have the means to care for himself outside of a structured environment at this time.

¶9 Stevens's written mental health assessment further substantiated her concerns. It concluded that S.G.R. presented a danger to himself because of his lack of insight and judgment into his illness and his continued belief that he can live independently, without assistance with his illness, "despite nearly dying and being homeless." She opined that S.G.R. was not amenable to placement in a group home or release to the community "due

4

to his age and history of leaving placements to drink, which exacerbates his mental illness. . . . [and] his pervasive pattern of non-compliance to medical treatment."

¶10    S.G.R. testified, describing himself as an "old cowboy" who does not like being kept in "captivity." He stated that if he was released, he would maintain his sobriety by attending Alcoholics Anonymous meetings and by continuing to take his prescribed medications. S.G.R. claimed that he had money in a bank account and that he owned a home in Wyoming, which he could live in if released.

¶11    Cummings testified that S.G.R.'s placement options were limited because of the combination of his mental illness and his alcoholism. Cummings expressed concern that S.G.R. was unable to maintain sobriety, observing that during his stay at the State Hospital he "managed to get away from them and caught a ride to a bar and had drinks there." Based on his conversations with S.G.R.'s family, Cummings testified that it was "not an option" for S.G.R. to return to the family home in Wyoming. Although Cummings committed to exploring admission into a veterans' home or assisted living facility, he believed it would be "very difficult" as the veterans' home tended to "refuse most people" with a mental health history, and an assisted living facility would not be suitable unless S.G.R. maintained sobriety.

¶12    At the conclusion of the hearing, the District Court granted the petition because S.G.R. "does suffer from a mental disease or defect, that being alcohol induced dementia, which leads to him being a danger to himself." The court cited S.G.R.'s elopement risk and his inability to understand his own conditions as risks to his safety, particularly in

5

light of his history of seizures and the risk of his "get[ting] back on alcohol." On January 12, 2015, the District Court issued its Order for Recommitment requiring that S.G.R. be committed to the Nursing Care Center for a period not to exceed one year from December 16, 2014, and directing that the staff begin looking for alternative placement for him. S.G.R. appeals.

## STANDARDS OF REVIEW

¶13 We review commitment orders to determine whether a district court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re S.M.*, 2014 MT 309, ¶ 13, 377 Mont. 133, 339 P.3d 23. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence or if, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *In re L.K.-S.*, 2011 MT 21, ¶ 14, 359 Mont. 191, 247 P.3d 1100. Whether a district court's findings of fact meet statutory requirements is a question of law that we review for correctness. *In re L.L.A.*, 2011 MT 285, ¶ 6, 362 Mont. 464, 267 P.3d 1.

## DISCUSSION

¶14 *Whether the District Court's order met the statutory requirements for extending commitment under §§ 53-21-127 and -128, MCA.*

¶15 Before a period of civil commitment expires, the "professional person in charge of the patient at the place of commitment may petition the district court in the county where the patient is committed for extension of the commitment period." Section 53-21-128(1)(a), MCA. "If the court finds that the patient continues to suffer from a

6

mental disorder and to require commitment, the court shall order commitment as set forth in § 53-21-127." Section 53-21-128(1)(d), MCA. Section 53-21-127(7), MCA, provides that commitment is justified so long as any one of the criteria listed under § 53-21-126(1), MCA, is satisfied. The criteria are as follows:

> (a) whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;

> (b) whether the respondent has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others;

> (c) whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; and

> (d) whether the respondent's mental disorder, as demonstrated by the respondent's recent acts or omissions, will, if untreated, predictably result in deterioration of the respondent's mental condition to the point at which the respondent will become a danger to self or to others or will be unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety.

Section 53-21-126(1), MCA. Section 53-21-127(8)(a), MCA, requires the court to make certain findings of fact, including "a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment."

¶16 In its Order for Recommitment, the District Court did not specify which of the § 53-21-126(1), MCA, criteria on which it relied to conclude that S.G.R. continued to require commitment. The court did, however, review procedural history and recount specific portions of testimony presented at the December hearing. Noting that they were "[b]ased on testimony given at the hearing and the Mental Health Assessment filed by

7

Sue Stevens," the court then set forth the following five findings of fact: 1) "[S.G.R.] continues to suffer from the mental disorder of Dementia with behavioral disturbances, Alzheimer's disease, Drug Induced Persisting Dementia, Alcohol Dependence and Insomnia"; 2) "Currently, the most appropriate alternative and least restrictive placement for [S.G.R.] is the [Nursing Care Center]. The Care Plan Team will start looking for other alternative placements"; 3) "The treatment care plan as filed with this court appears to be appropriate for [S.G.R.] and should be continued with regular review"; 4) It is necessary for the [Nursing Care Center] to be given the authority to administer all medications deemed necessary and appropriate for [S.G.R.] and to administer those medications involuntarily, if necessary, as he is unable to appreciate the necessity for a proper medication regimen to control his mental illness"; and 5) "Fergus County shall not be held responsible for any costs incurred in this matter. [S.G.R.] is a resident of Yellowstone County, which is the county responsible for any costs incurred in this matter as provided by MCA §§ 53-21-128(1)(c), 53-21-132, and/or 53-21-113."

¶17 S.G.R. argues that the District Court's findings in its Order for Recommitment were insufficient to satisfy the statutory requirements set forth above. The State counters that "[a]lthough that section of the order does not contain detailed factual findings about S.G.R., the section of the order where the court summarized [hearing] testimony should also be viewed as findings." Additionally, the State suggests that this Court rely on the District Court's oral findings to evaluate whether the requirements under § 53-21-127(8)(a), MCA, were met. Specifically, the State proposes that we rely on the District

8

Court's statement at the conclusion of the hearing, "Well the Court will find that [S.G.R.] does suffer from a mental disease or defect, that being alcohol induced dementia, which leads to him being a danger to himself." Further, the State proposes that we rely on the District Court's express comment that S.G.R.'s delusions, elopement risk, and inability to understand his own conditions "put him at risk."

¶18 In *L.L.A.*, L.L.A. challenged the sufficiency of a district court's factual findings supporting her involuntary commitment. *L.L.A.*, ¶ 6. In that case, the district court issued seven findings of fact supporting its order of commitment that were "derived almost exclusively from the language of § 53-21-126, MCA." *L.L.A.*, ¶ 13. We reversed the order of commitment, concluding that the court's findings were insufficient because they lacked any references to L.L.A's actual behavior to demonstrate why she required commitment. *L.L.A.*, ¶ 13.

¶19 Conversely, in *In re M.P.-L.*, 2015 MT 338, 381 Mont. 496, 362 P.3d 627, we upheld the involuntary commitment order in the face of M.P.-L.'s challenge to the sufficiency of the court's factual findings. In that case, the district court issued four findings of fact supporting its order of commitment. *M.P.-L.*, ¶ 18. We concluded:

> The District Court included information in the findings reflecting M.P.-L.'s circumstances leading to the court's conclusions under § 53-21-126(1), MCA. The evidence included conclusions from testimony by [the professional who conducted an evaluation of M.P.-L.] that M.P.-L.: suffered from mental illness; made three suicide threats; and continued to be a threat to herself.

9

*M.P.-L.*, ¶ 19. We noted that although the district court's written findings are "bare-boned," the court provided sufficient reasoning in its findings to justify commitment and satisfy the requirements under § 53-21-127(8), MCA. *M.P.-L.*, ¶ 20.

¶20 We have applied the doctrine of implied findings in involuntary commitment cases, "consult[ing] hearing transcripts in addition to the written findings" where the latter are claimed to be insufficient to support commitment. *S.M.*, ¶ 28. The doctrine of implied findings "holds that where 'findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence.'" *S.M.*, ¶ 28 (quoting *In re Mental Health of S.C.*, 2000 MT 370, ¶ 15, 303 Mont. 444, 15 P.3d 861). In *S.M.*, we invoked the doctrine and held that a district court's written order of commitment must be "minimally sufficient" and at least adequate to apprise the staff at the receiving facility, treatment professionals, and law enforcement of the particular condition and behaviors that gave rise to the need for commitment. *S.M.*, ¶ 29.

¶21 There is not a substantive distinction between the order entered in this case and the commitment orders we affirmed in *M.P.-L.* and *S.M.* Although we noted in *S.M.* that the District Court "could have been more specific and listed more of the facts," we relied on the record, the court's oral and written findings, and the doctrine of implied findings to conclude that the order was "minimally sufficient" and properly based on the respondent's "individual circumstances." *S.M.*, ¶ 22. Similarly, here, although the District Court's written findings are spartan, they were stated in terms, like in *M.P.-L.*,

10

that recounted specific witness testimony from the hearing. *M.P.-L.*, ¶ 18. Here, in fact, the court expressly noted that its findings were "based on" that evidence. The record establishes that the court's written, oral, and implied findings properly were based on S.G.R.'s "individual circumstances." *S.M.*, ¶ 22.

¶22 The order that we reversed in *L.L.A.* was insufficient because it "contain[ed] no indication of the facts upon which [the court] found that" L.L.A. was substantially unable to protect her life and safety, and no information specifically reflecting L.L.A's circumstances or particular behaviors that supported the district court's conclusions. *L.L.A.*, ¶¶ 11, 13. Here, in contrast, the order identifies the testimony and evidence on which the court premised its findings. The evidence and testimony support the court's conclusion that S.G.R.'s mental illness required extension of his commitment because he was a "danger to himself" and was "unable to appreciate the necessity for a proper medication regimen to control his mental illness."

¶23 Although the District Court's recommitment order is not a model, it does not suffer the same statutory defect as in *L.L.A.* because the order reflects the particular circumstances and behaviors that supported the court's conclusions, and because the court provided sufficient reasoning to justify its decision. The District Court's oral findings—which are appropriate for consideration under our precedent, *S.M.*, ¶ 27—substantiate its determination that the standards for recommitment had been satisfied. We conclude that the District Court's written order, when considered as a whole and together with the court's oral findings, was "minimally sufficient" to meet the

11

involuntary commitment statute's requirement for a "detailed statement" on which its conclusions were based, and that it was supported by substantial evidence. *S.M.*, ¶ 22.

¶24    S.G.R. also faults the District Court for failing to identify which subsection of the applicable statute authorized the commitment.   Based on the court's oral statements, S.G.R. "assum[es]" that he was committed pursuant to § 53-21-126(1)(d), MCA, and argues that his commitment to the Nursing Care Center is not legally or factually supportable under that subsection.  S.G.R. argues that because the court failed to tie its findings to any other subsection of the statute, it appears to have premised commitment on § 53-21-126(1)(d), MCA, which required the court to commit him to a community placement instead of to the Nursing Care Center.  Section 53-21-127(7), MCA.  The District Court's oral finding that S.G.R.'s dementia and inability to understand his own condition "put him at risk" of danger does reflect the language of subsection (1)(d).  But, although its findings about the reason for commitment were "general in terms," they clearly imply that S.G.R. was recommitted because he was "substantially unable to provide for his own basic needs of food, clothing, shelter, health, or safety."  Section 53-21-126(1)(a), MCA.   The District Court recognized that S.G.R. could not live independently, lacked appreciation for his condition, and was unable to keep himself safe. As discussed above, the record contains substantial evidence to support the District Court's conclusions in this regard.

12

## CONCLUSION

¶25 For the foregoing reasons, we hold that the District Court's written order was minimally sufficient and supported by substantial evidence. Its January 12, 2015 Order for Recommitment is affirmed.


/S/ BETH BAKER


We concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ MIKE McGRATH


Justice Laurie McKinnon, dissenting.

¶26 The order extending S.G.R.'s commitment was not "minimally sufficient," as this Court holds today, and his involuntary commitment must be reversed.[1] The District Court's findings failed to detail the factual basis of its determination that Respondent continued to suffer from a mental disorder and required continued commitment. The

---

[1] S.G.R. does not raise, and therefore I do not address, whether the time of Respondent's second extension of commitment, of up to one year, violates the time limitations imposed by § 53-21-128, MCA. I note, however, that § 53-21-128(1) and (2), MCA, appear to place a time limitation of six months on any order extending commitment, while § 53-21-128(3), MCA, appears to prohibit further extensions from affecting a patient's custody for more than one year. It does not appear that, under any construction of § 53-21-128, MCA, a second order for recommitment could be for as long as one year. However, the relationships between the various time limitations found in the subsections of § 53-21-128, MCA, have not been raised by the parties or addressed by the Court.

13

District Court's findings, therefore, failed to satisfy the statutory criteria outlined in §§ 53-21-127 and -128, MCA. The court's summarization of the testimony presented and restatement of Respondent's diagnosis do not meet the minimum "bare-boned" findings found sufficient in *M.P.-L.* and *S.M.* and do not constitute strict compliance with the statutory mandate. Finally, this Court utilizes the doctrine of implied *findings* inappropriately to determine a conclusion of law: "that the standards for recommitment had been satisfied." Opinion, ¶ 23. In fact, the District Court failed to indicate pursuant to which statutory subsection it found S.G.R. required recommitment—§ 53-21-126(1)(a), (b), (c), or (d).

¶27    The situation in *M.P.-L.*, is distinguishable from S.G.R.'s. There, the district court issued two orders. This Court determined that the first order was "deficient and failed to comply with § 53-21-127(8)(a), MCA," because it did not include a detailed statement of facts. *M.P.-L.*, ¶¶ 10-11. However, the district court issued an additional order, which, when viewed together with the first order, "provided proper facts and information the court used to determine that M.P.-L. was suffering a mental disorder requiring commitment." *M.P.-L.*, ¶ 22. More importantly, the statutory subsection upon which the court relied to find M.P.-L. required commitment was set forth in the court's order. Particularly, the court's factual findings that M.P.-L. attempted suicide on three occasions established that M.P.-L. presented an "imminent threat of injury to [herself]," under § 53-21-126(1)(c), MCA. *M.P.-L.*, ¶ 22. We concluded this was minimally sufficient and went on to "reiterate that the statutory requirements of an involuntary commitment

14

must be strictly adhered to by the district courts, including the requirement of detailed findings under § 53-21-127(8)(a), MCA, in order to justify appropriate decisions and to follow proper procedure." *M.P.-L.*, ¶ 24.

¶28    *S.M.*, is even less applicable to the case at bar than *M.P.-L.*  In that case, S.M. did not primarily challenge the sufficiency of the district court's factual findings, as the Court misstates.  Opinion, ¶ 20.  Instead, "S.M. argue[d] there was insufficient evidence to support the District Court's determination that she was substantially unable to care for her own health and safety" or, alternatively, that the "District Court failed to make a 'detailed statement of facts' supporting this determination."  *S.M.*, ¶ 19.  This distinction is important and led to us utilizing the doctrine of implied findings, which was appropriate for our analysis of her insufficient evidence challenge, but inappropriate for our analysis of S.G.R.'s insufficient order challenge.  In *S.M.*, we also discussed whether the findings of fact were sufficient; however, the challenge was focused on whether evidence in the record supported the district court's conclusion that she required commitment under § 53-21-126(1)(d), MCA.  *S.M.*, ¶ 19.

¶29    The findings here do not specify what the court relied on to find S.G.R. suffered from a mental disorder or what facts, statute, or subsection the court considered and utilized to determine his continued commitment was necessary.  This failure confused the parties' arguments on appeal.  S.G.R., for the sake of his arguments on appeal, assumes the District Court extended his commitment under subsection (d) of § 53-21-126(1), MCA, while the State assumes the District Court relied on subsection (c).  This Court

15

inexplicably determines that "although its findings about the reason for commitment were 'general in terms,' they clearly imply that S.G.R. was recommitted because he was 'substantially unable to provide for his own basic needs of food, clothing, shelter, health, or safety'" under subsection (a). Opinion, ¶ 24. This confusion demonstrates perfectly what the District Court failed to accomplish in its order. Contrary to being "clear," it is completely unclear which statutory subsection of § 53-21-126(1), MCA, the District Court relied upon in recommitting S.G.R. against his will. The District Court cannot rely on evidence in the record as a shortcut method to fill in gaps in its order that are required by statute. In light of the order's deficiencies, the statutory requirements authorizing S.G.R.'s second extension of commitment were not satisfied and must be reversed.

¶30 S.G.R.'s second issue raised on appeal asks whether the District Court erred in extending his commitment to the Nursing Care Center instead of a community facility. He contends that the District Court was prohibited by statute from extending his commitment to the Nursing Care Center. Under § 53-21-127(7), MCA, "if the court relies solely upon the criterion provided in 53-21-126(1)(d)" (that if untreated, respondent "will become a danger to self or to others or will be unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety"), "the court may require commitment only to a community facility or program or an appropriate course of treatment . . . and may not require commitment at the state hospital, a behavioral health inpatient facility, or the Montana mental health nursing care center." Section 53-21-127(7), MCA. Because we do not know which statutory subsection of

16

§ 53-21-126(1), MCA, the District Court relied upon to extend S.G.R.'s commitment—it could be either subsection (a), (c), or (d) according to the parties and this Court—we cannot know whether § 53-21-127(7), MCA, applies or whether S.G.R.'s second argument on appeal has merit. Despite the Court's efforts to assemble an order upon the basis of implied findings, a statement by the District Court during trial that S.G.R.'s mental condition "put him at risk" does not equate to a statutory determination being made by the *trial* court regarding the necessity of commitment. That S.G.R.'s mental condition "put him at risk" could have been logically construed as support for him being "substantially unable to provide for his own basic needs of food, clothing, shelter, health, or safety" under § 53-21-126(1)(a), MCA; an "imminent threat of injury to [himself]" under § 53-21-126(1)(c), MCA; or even "predictably result in deterioration of [his] mental condition to the point at which [he] will become a danger to self," under § 53-21-126(1)(d), MCA. It does not, however, "clearly imply" any of these options.

¶31   I believe the District Court's order extending S.G.R.'s commitment is insufficient and must be reversed. However, the most concerning error the Court makes is in failing to appreciate the role an appellate court has to review determinations of the trial court. When those determinations have not been made in the first instance, we cannot string a web of implied findings and baldly state that it is "clear" upon which statutory subsection the trial court relied in fashioning its order of commitment. We do more harm to litigants and our precedent through such faulty analysis and manipulation of the record than had

17

we simply reversed an individual's order of commitment for its insufficiency, despite that individual's need for assistance.

/S/ LAURIE McKINNON

Justice Jim Rice joins in the dissenting Opinion of Justice McKinnon.

/S/ JIM RICE