FILED

03/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0409

DA 16-0409

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 68

IN THE MATTER OF:

K.P.,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DI 16-49
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Robin A. Meguire, Attorney at Law, Great Falls, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

            Kirsten H. Pabst, Missoula County Attorney, Jessica Simmons, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  March 1, 2017

Decided:  March 28, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant, K.P., appeals the order of the Fourth Judicial District Court, Missoula County, involuntarily committing him to the Montana State Hospital (MSH) in Warm Springs. We reverse and address the following issue on appeal:

*Did the involuntary commitment order violate the requirements of § 53-21-127(8), MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On May 26, 2016, the Missoula County Attorney's Office petitioned the District Court for a determination that K.P. suffered from a mental disorder requiring involuntary commitment, based on a mental health evaluation that concluded K.P. was suffering from Schizoaffective Disorder. Earlier that day, K.P. had been involuntarily admitted to Saint Patrick Hospital after committing, as described in the report, "acts of vandalism at his local mental health center and threatening to kill people." At the hospital, K.P. struck one of the nurses. The report advised that K.P. was "well known" to the hospital and, compared to earlier evaluations by the same doctor, was "well below his baseline" and "presently in the midst of a psychotic episode."

¶3 Based on the report, the District Court determined that there was probable cause that K.P. suffered from a mental disorder, and that "there is an imminent threat of injury to himself or to others, or he is substantially unable to care for himself." The District Court ordered evaluation, treatment, and detention for K.P., as well as initiation of commitment proceedings and the appointment of counsel.

2

¶4    On June 2, 2016, the District Court conducted a commitment hearing. The only witness was Thomas Hodgetts, a Licensed Clinical Social Worker, who testified that K.P. was suffering from schizophrenia and was an imminent threat to others, and recommended he be committed to MSH for three months. At the conclusion of the hearing, the District Court remanded K.P. to the custody of the Missoula County Sheriff. Then, outside the presence of K.P., the District Court stated from the bench:

> THE COURT: So based on the testimony presented, the court finds K.P. to be suffering from schizophrenia, that he is in need of commitment, and the least restrictive placement is the Montana State Hospital.
>
> The court further finds that treatment can be successful at the state hospital, and it's likely that his stay there will be fairly limited, and that when he comes back to the community certainly his ongoing treatment and medication regime needs to be monitored as for all people on schizophrenia.
>
> The court directs the transport to the state hospital and the state to prepare the appropriate order.
>
> .   .   .
>
> THE COURT [Responding to a question from counsel regarding under which statutory prong K.P. was being committed]: Well, he's a danger to others and his—there was sufficient testimony presented that the danger was primarily the behavior that he exhibits to others . . . and that's the danger.
>
> That's why I had him removed from the courtroom before I announced my decision.
>
> .   .   .
>
> THE COURT [Responding to a question from counsel regarding involuntary medication]: Yes, it needs to be—I'm sorry. I forgot that. Yes, it needs to be an option, and he needs to go through the protocols at the state hospital if he refuses, but medication is essential, and that's another

3

reason why, you know, I'm committing him. That he's shown reluctance to take medication.

¶5 On June 20, 2016, the State was informed from MSH that K.P. was to be unconditionally discharged from the MSH on June 24, 2016, to the Western Montana Mental Health Center in Missoula. On July 1, 2016, the District Court issued a written commitment order, finding that K.P. should be committed for not more than three months in the MSH. K.P. was conditionally released by the MSH on July 6, 2016.

## STANDARD OF REVIEW

¶6 Whether a district court's findings of fact meet statutory requirements is a question of law that we review for correctness. *In re D.L.B.*, 2017 MT 1, ¶ 10, 386 Mont. 180, 389 P.3d 227 (citing *In re S.G.R.*, 2016 MT 70, ¶ 13, 383 Mont. 74, 368 P.3d 1180).

## DISCUSSION

¶7 K.P. argues that the District Court's oral order of involuntary commitment violated the governing statute and due process because it failed to include the required factual findings, citing *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 13, 339 Mont. 107, 168 P.3d 662 and *In re L.L.A.*, 2011 MT 285, ¶ 7, 362 Mont. 464, 267 P.3d 1. The State counters that the statute does not require detailed oral findings, and when considering the written order as well, the District Court sufficiently complied with the statutory requirements.

¶8 Because involuntary commitment has a "calamitous effect" on the person being committed, we have long held the commitment statutes must be "strictly followed." *In re Mental Health of E.P.B.*, ¶ 7; *accord In re C.R.C.*, 2004 MT 389, ¶ 13, 325 Mont. 133,

4

104 P.3d 1065; *In re the Mental Health of R.M.*, 270 Mont. 40, 44, 889 P.2d 1201, 1204 (1995); *In re Mental Health of S.J.*, 231 Mont. 353, 355, 753 P.2d 319, 320 (1988). "Conclusory statements of statutory criteria do not constitute strict compliance with the statutory mandate of § 53-21-127(8)(a), MCA." *In re L.L.A.*, ¶ 11 (internal quotations omitted); *accord In re Mental Health of E.P.B.*, ¶ 13.

¶9    Section 53-21-127(8), MCA, provides:

In ordering commitment pursuant to this section, the court shall make the following findings of fact:

(a) a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment.

(b) the alternatives for treatment that were considered;

(c) the alternatives available for treatment of the respondent;

(d) the reason that any treatment alternatives were determined to be unsuitable for the respondent;

(e) the name of the facility, program, or individual to be responsible for the management and supervision of the respondent's treatment;

(f) if the order includes a requirement for inpatient treatment, the reason inpatient treatment was chosen from among other alternatives;

(g) if the order commits the respondent to the Montana mental health nursing care center, a finding that the respondent meets the admission criteria of the center and that the superintendent of the center has issued a written authorization specifying a date and time for admission; and

(h) if the order includes involuntary medication, the reason involuntary medication was chosen from among other alternatives.

¶10    In *In re Mental Health of E.P.B.*, we held the district court's findings were a "far cry" from the statutory requirements where the district court recited a witness's

5

testimony, noted it was consistent with other professional opinions, and entered four conclusory statements on the statutory criteria. *In re Mental Health of E.P.B.*, ¶¶ 10, 13. Similarly, in *In re L.L.A.*, we held the district court's order failed to satisfy statutory requirements where it "contain[ed] no indication of the facts upon which it found that, because of her mental disorder, L.L.A. is substantially unable to protect her life and safety or that imminent threat of injury to herself or others will result if she is left untreated." *In re L.L.A.*, ¶ 11.

¶11 Here, the District Court's oral order only generally reflected the requirements of § 53-21-127(8), MCA, finding that K.P. suffered from schizophrenia, he needed commitment, MSH was the least restrictive option, his stay at MSH would likely be limited and successful, he was being committed for the danger he was to others, and involuntary medication could be administered. As K.P. argues, any informed review of the record leads to "an inescapable truth—the [D]istrict [C]ourt did not make the factual findings required by Montana Code Annotated § 53-21-127(8)." The order did not satisfy the statute because there were no findings of facts to support the general conclusions, thus failing to provide "a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment." Section 53-21-127(8)(a), MCA.

¶12 The State's argument that this Court should utilize the findings of the written order in conjunction with the oral findings fails to address the fact that the written order was entered after K.P. had been committed for 30 days, just five days before he was conditionally released from MSH. Thus, the oral order was essentially the order that

6

involuntarily committed K.P., not the belated written order, and it implicated the liberty rights the statutory scheme serves to protect. *See In re B.D.*, 2015 MT 339, ¶ 7, 381 Mont. 505, 362 P.3d 636 (noting "strict adherence" exists due to the "utmost importance of the rights at stake in [commitment] proceedings"); *In re Mental Health of L.K.-S.*, 2011 MT 21, ¶ 15, 359 Mont. 191, 247 P.3d 1100 (holding the "procedural safeguards" to protect these rights are of "critical importance"). Oral findings can be helpful and we have cited them, in supplement to a written order, to affirm involuntary commitments. *See, e.g., In re D.L.B.*, ¶ 17; *In re S.M.*, 2014 MT 309, ¶ 27, 377 Mont. 133, 339 P.3d 23. However, while § 53-21-127(8), MCA, does not expressly mandate that an order of commitment be in writing, an oral order alone is unlikely to satisfy the detailed requirements and the purposes of the statute. As we have explained, "the *written order of commitment* must at the least be adequate to 'apprise[ ] the receiving staff at [the commitment facility], treatment professionals, and even law enforcement who may be involved in transporting the patient, of the particular condition and behaviors that prompted hospitalization or gave rise to the need for commitment.'" *In re S.M.*, ¶ 29 (quoting *In re L.L.A.*, ¶ 21) (emphasis added); *see also* § 3-5-501(1)(d), (2), MCA (providing that "all orders, judgments and decrees" are to be "entered" by the clerk of the district court, and kept either electronically or in paper form).

¶13 The State also argues that we should apply the doctrine of implied findings to enhance the oral order. Under this doctrine, "where findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence." *In re S.M.*, ¶ 28 (internal quotations

7

omitted); *In re M.P.-L.*, 2015 MT 338, ¶ 20, 381 Mont. 496, 362 P.3d 627 (citing use of written and oral findings, as well as the use of the doctrine of implied findings). However, "[w]e decline to expand the doctrine of implied facts to the degree necessary to affirm a commitment order that is beyond 'bare-bones' and 'spartan.'" *In re C.C.*, 2016 MT 174, ¶ 23, 384 Mont. 135, 376 P.3d 105. Here, the oral order of commitment is insufficient to be affirmed by the use of implied findings.

¶14 K.P. also argues that his constitutional right to due process was violated by his removal from the courtroom before the District Court orally pronounced its order, but having invalidated the order on statutory grounds, we need not address further issues. "Courts should avoid constitutional questions whenever possible." *Wolfe v. Dep't of Labor and Indus.*, 255 Mont. 336, 339, 843 P.2d 338, 341 (1992); *accord Sanchez v. State*, 2012 MT 191, ¶ 19, 366 Mont. 132, 285 P.3d 540; *State v. Peters*, 2011 MT 274, ¶ 33, 362 Mont. 389, 264 P.3d 1124.

¶15 Accordingly, the District Court's commitment order is reversed and vacated.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA