FILED

05/08/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0281

DA 16-0281

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 106

IN THE MATTER OF:

D.L.B.,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DI 15-11
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Chief Appellate Defender, Kristen L. Peterson,
Assistant Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

                Thomas P. Meissner, Fergus County Attorney, Craig R. Buehler,
Special Deputy County Attorney, Lewistown, Montana

Submitted on Briefs:  March 1, 2017

Decided:  May 8, 2017

Filed:

                                    Clerk

Justice Dirk M. Sandefur delivered the Opinion of the Court.

¶1     D.L.B. appeals the order of the Tenth Judicial District Court, Fergus County, recommitting him to the Montana Mental Health Nursing Care Center (Nursing Care Center) for a period of up to one year. We conclude the order's factual findings are deficient and remand for entry of an amended order in compliance with the express requirements of §§ 53-21-127 and -128(1)(d), MCA.

*Did the District Court's findings of fact meet the statutory requirements regarding alternative placement options?*

## BACKGROUND

¶2     D.L.B. has suffered from paranoid schizophrenia since his diagnosis at age 22 following a psychotic break. Now 76 years old, D.L.B.'s long history of mental illness includes numerous involuntarily psychiatric hospitalizations in Washington and Montana. When his disorder was not well managed by medication, D.L.B. became unable to meet and maintain his most basic needs of food, clothing, shelter, health, and safety.

¶3     On March 24, 2015, D.L.B. was transferred to the Nursing Care Center from the Montana State Hospital (MSH). Within 90 days of the transfer, certified mental health professional Susan Stevens, M.S., L.M.F.T., petitioned to extend D.L.B.'s commitment. Following an evidentiary hearing, the District Court recommitted D.L.B. to the Nursing Care Center for up to six months. D.L.B. appealed and this Court affirmed. *In re D.L.B.* (*D.L.B. I*), 2017 MT 1, ¶ 20, 386 Mont. 180, 389 P.3d 227.

¶4     On December 18, 2015, Stevens petitioned for a second extended commitment on the ground that D.L.B. continued to suffer from a mental disorder requiring evaluation and

2

treatment. The District Court appointed counsel and designated D.L.B.'s sister as his court-appointed "friend." At a contested hearing on January 22, 2016, Stacie Klemo, registered nurse supervisor at the Nursing Care Center, testified at length regarding D.L.B.'s mental disorder, daily assistance needs, and general treatment plan.

¶5 Susan Stevens evaluated D.L.B.'s condition at the time of the hearing as declining, depressed, and delusional. Stevens testified that D.L.B.'s history of medication noncompliance reflected his near total lack of insight regarding his mental illness. Stevens described a recurring pattern where D.L.B.'s psychiatric condition would stabilize during an involuntary hospitalization but then destabilize upon discharge due to medication noncompliance. Without daily medication, D.L.B.'s disorder would spiral out of control, causing rapid decompensation and renewed need for involuntary inpatient treatment. Stevens analyzed the alternative placements available and testified that, while D.L.B. experienced a serious and chronic mental illness, he did not require the acute level of care provided at MSH. However, according to Stevens, D.L.B.'s history demonstrated an inability to successfully manage in a community placement, even with extensive support services. Stevens further ruled out nursing home care due to D.L.B.'s active psychosis and because nursing homes cannot administer involuntary medication when needed. Stevens thus concluded that the Nursing Care Center was the least restrictive placement for effective treatment of D.L.B. At the hearing, D.L.B. contrarily stated he would rather live in a nursing home than remain at the Nursing Care Center.

¶6      At the close of the hearing, the District Court entered oral findings of fact from the bench that D.L.B. required recommitment, the Nursing Care Center was the least restrictive placement for effective treatment, and involuntary administration of necessary medication was in his best interest. On February 9, 2016, the Court entered written findings of fact, conclusions of law, and an order recommitting D.L.B. for involuntary mental health treatment at the Nursing Care Center.

## STANDARD OF REVIEW

¶7      We review involuntary civil commitment orders to determine whether the district court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re S.M.*, 2014 MT 309, ¶ 13, 377 Mont. 133, 339 P.3d 23. Upon review of involuntary commitment proceedings, we review the evidence in the light most favorable to the prevailing party. *In re G.M.*, 2007 MT 100, ¶ 12, 337 Mont. 116, 157 P.3d 687 (citation omitted). Whether a district court's findings of fact satisfy statutory requirements is a question of law reviewed for correctness. *S.M.*, ¶ 13; *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 5, 339 Mont. 107, 168 P.3d 662.

## DISCUSSION

*Did the District Court's findings of fact meet the statutory requirements regarding alternative placement options?*

¶8      Title 53, chapter 21, MCA, sets forth specific procedural and substantive requirements for involuntary civil commitment proceedings. No later than two weeks before an involuntary commitment expires, the responsible professional may petition the court to extend commitment upon a specified showing of need for the extension. Section

4

53-21-128(1)(a), MCA.  Except for the right to a jury trial, the extension procedure "must be the same in all respects as the procedure" required for an initial mental health commitment.  Section 53-21-128(1)(c), MCA.

¶9      If the court finds on hearing that the respondent "continues to suffer from a mental disorder and to require commitment" under any of the substantive criteria of § 53-21-126(1), MCA, then "the court shall order commitment" in accordance with § 53-21-127, MCA.  Section 53-21-128(1)(d), MCA.  At a separate dispositional hearing, the court must determine the least restrictive placement for effective treatment from the alternatives specified in § 53-21-127(3), MCA.  Sections 53-21-127(5) and -128(1)(d), MCA.   The selected placement alternative must be based on a "comprehensive individualized plan of treatment."  Section 53-21-128(1)(d), MCA.

¶10     Whether "stated on the record" or by written "opinion or memorandum of decision," district courts must generally make findings of fact and conclusions of law stating the factual and legal bases for decisions in civil matters.  M. R. Civ. P. 52(a)(1).  In extending a prior involuntary mental health commitment, district courts must make specific findings of fact:

(1)     stating in detail "the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment" under the commitment criteria of §§ 53-21-126, -127(8)(a), and -128(1)(d), MCA;

(2)     describing "what alternatives for treatment of the [respondent] are available," §§ 53-21-127(8)(c) and -128(1)(d), MCA;

(3)     describing "what [treatment] alternatives were investigated," §§ 53-21-127(8)(b) and -128(1)(d), MCA;

5

(4)     describing "why the investigated alternatives were not found suitable," §§ 53-21-127(8)(d) and -128(1)(d), MCA;

(5)     stating "the name of the [selected] facility, program, or individual to be responsible for the management and supervision of the respondent's treatment," § 53-21-127(8)(e), MCA;

(6)     stating the specific term of the extended commitment, §§ 53-21-127(3) and -128(1)(d), MCA;

(7)     determining which of the placement alternatives considered is "the least restrictive alternative to protect the respondent and the public and to permit effective treatment," § 53-21-127(5), MCA;

(8)     stating, as applicable, "the reason inpatient treatment was chosen from among other alternatives," § 53-21-127(8)(f), MCA;

(9)     finding, as applicable, "that the respondent meets the [Montana Mental Health Nursing Care Center] admission criteria" and, if so, that the Nursing Care Center superintendent "has issued a written authorization specifying a date and time for admission," § 53-21-127(8)(g), MCA;

(10)    finding "that a comprehensive individualized plan of treatment" exists for the respondent in the selected placement, § 53-21-128(1)(d), MCA; and

(11)    stating, as applicable, "the reason involuntary medication was chosen from among other alternatives," § 53-21-127(8)(h), MCA.

Due to the profound impact of involuntary commitment on the fundamental liberty interests of persons suffering from mental disorders, district courts must strictly comply with all procedural and substantive requirements for involuntary mental health commitments, including required findings of fact, regardless of "the commonly urgent nature" of these proceedings. *D.L.B. I*, ¶ 17; *In re B.D.*, 2015 MT 339, ¶ 7, 381 Mont. 505, 362 P.3d 636. At a minimum, omission of required findings of fact warrants remand for statutory

6

compliance. *In re Mental Health of D.S.*, 2005 MT 152, ¶¶ 19-21, 327 Mont. 391, 114 P.3d 264.

¶11 D.L.B. does not dispute on appeal the District Court's general findings under §§ 53-21-126, -127, and -128(1)(d), MCA, that he continued to suffer from a mental disorder requiring continued treatment for up to one year. Though he questions why the professionals who testified at the hearing did not consider a potential family placement with his sister, D.L.B. also does not challenge the court's finding that the Nursing Care Center was the least restrictive placement option. Rather, he merely challenges the sufficiency of the District Court's written findings of fact and seeks remand for entry of an amended recommitment order with required statutory findings.

¶12 In response, the State first asserts that D.L.B.'s appeal is moot because his recommitment to the Nursing Care Center began on January 22, 2016, and expired before the completion of appellate briefing in this matter. D.L.B. contrarily asserts that his challenge of the statutory sufficiency of the order falls "under the 'capable of repetition, yet evading review' exception to the mootness doctrine." *See, e.g., In re J.S.W.*, 2013 MT 34, ¶ 11, 369 Mont. 12, 303 P.3d 741. We agree with D.L.B. Apparently due to the urgent nature of these proceedings, facially deficient involuntary commitment orders continue to come before this Court and are indeed likely to reoccur. Thus, we conclude that the issue raised by D.L.B. falls within the exception to the mootness doctrine as a matter capable of repetition otherwise likely to evade review.

¶13 Pursuant to our doctrine of implied findings, the State next asserts that the District Court's written order is minimally sufficient in light of its bench findings and the record evidence. Under that doctrine, otherwise facially insufficient findings of fact may be minimally sufficient if, within the scope of the express findings made, more specific findings of fact "necessary to the determination" can be clearly inferred from other express findings or the evidentiary record. *In re S.G.R.*, 2016 MT 70, ¶¶ 20-24, 383 Mont. 74, 368 P.3d 1180.

¶14 However, the implied findings doctrine is not unlimited. This Court will not imply otherwise essential findings if the implied findings would be "inconsistent with express findings made." *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 385, 708 P.2d 573, 576 (1985). Further, the implied findings doctrine may apply to satisfy express statutory requirements for involuntary commitments only if specific evidence referenced in other express findings clearly supports the implied statutory finding. *Compare S.G.R.*, ¶¶ 16-24 (required § 53-21-127(8)(a) finding on §§ 53-21-126(1) and -128(1)(d) requirements for necessity of continued treatment supported by other findings referencing specific evidence clearly showing need for commitment), *and In re Mental Health of S.C.*, 2000 MT 370, ¶¶ 12-15, 303 Mont. 444, 15 P.3d 861 (required § 53-21-127(8)(h) finding on need for involuntary medication "abundantly clear from" other "detailed findings"), *with In re L.L.A.*, 2011 MT 285, ¶¶ 13-22, 362 Mont. 464, 267 P.3d 1 (findings couched in terms of statutory language without specific reference to the respondent's circumstances and relevant behaviors insufficient to support § 53-21-126(1) finding), *G.M.*, ¶¶ 21-23

(conclusory restatement of statutory criteria and vague reference to witness testimony insufficient), *and D.S.*, ¶ 21 (insufficient description of placement and treatment alternatives considered under § 53-21-127(3) and (5), MCA). We will not stretch the doctrine of implied findings to remedy commitment orders that are "beyond 'bare-bones' [or] 'spartan.'" *In re C.C.*, 2016 MT 174, ¶ 23, 384 Mont. 135, 376 P.3d 105 (insufficient findings containing "no detailed facts and recount[ing] no testimony . . . specific to [the respondent's] condition, symptoms, or actions"). District courts must strictly comply with the detailed findings requirements of §§ 53-21-127(8) and -128(1)(d), MCA. *D.L.B. I*, ¶ 17; *C.C.*, ¶ 23; *B.D.*, ¶ 7.

¶15 In this case, the District Court's recommitment order set forth a prefatory summary of relevant testimony from mental health professional Susan Stevens and Nursing Care Center registered nursing supervisor Stacie Klemo regarding D.L.B.'s diagnosed mental disorder (schizophrenia), symptoms (delusional/irrational thinking), related threatening and aggressive behavior, history of refusing medication, and related inability to meet or provide for his own basic needs. The summary further referenced Stevens' unrebutted opinion that the Nursing Care Center "is the least restrictive placement until a new placement can be arranged." The Court's summary closely corresponds to the witnesses' unrebutted testimony on the hearing record.

¶16 As to placement alternatives considered and the most appropriate and least restrictive placement selected, Ms. Stevens testified that:

> I . . . determined that [D.L.B.] did not need a more restrictive environment such as the State Hospital. That is for more acute illness. He has a chronic

illness and the [Nursing Care Center] is handling his care in a safe manner . . . I ruled out nursing home care due to his psychosis as well as their . . . inability to administer medications involuntarily. At this time there is no family member available to care for him due to his inability to meet his own basic needs. Therefore, I determined that the least restrictive environment was the [Nursing Care Center].

At the close of hearing, the District Court accordingly made the following bench findings and order:

> Then based on the testimony of Ms. Stevens and the record in this matter the Court will find for the reasons previously stated that commitment is necessary. The Court will also find for the reasons previously stated that the [Nursing Care Center] is the least restrictive placement for [D.L.B.] to receive the help that he needs. The Court will then grant the petition for recommitment and recommit [D.L.B.] to the [Nursing Care Center] for a period of up to one year unless sooner released. And we will grant to the facility the ability to administer medications involuntarily if needed for [D.L.B.'s] best interests and health reasons, for his protection and the protection of other residents and staff.

Apart from its prefatory summary of the evidence, the District Court's subsequent written recommitment order set forth nine findings of fact. The only express findings addressing D.L.B.'s need for continued commitment and the selected placement alternative were conclusory Finding Nos. 6 and 7, to wit:

> 6. Testimony from the Petitioner, Sue Stevens, verified that commitment is necessary for D.L.B.

> 7. The most appropriate and least restrictive placement for D.L.B. is the Montana Mental Health Nursing [Care] Center (MMHNCC).

¶17 We cannot apply our implied findings doctrine in derogation of express statutory requirements for specific findings of fact. *D.S.*, ¶¶ 19-21. The statutorily required findings

10

of fact for extension of a prior involuntary mental health commitment include, *inter alia*, specific findings describing or stating:

(1) "what [treatment] alternatives were investigated," §§ 53-21-127(8)(b) and -128(1)(d), MCA;

(2) "what alternatives for treatment of the [respondent] are available," §§ 53-21-127(8)(c) and -128(1)(d), MCA;

(3) "why the investigated alternatives were not found suitable," §§ 53-21-127(8)(d) and -128(1)(d), MCA;

(4) as applicable, "the reason inpatient treatment was chosen from among other alternatives," § 53-21-127(8)(f), MCA; and

(5) as applicable, "that the respondent meets the admission criteria" of the [Montana Mental Health Nursing Care Center] and, if so, that the superintendent "has issued a written authorization specifying a date and time for admission," § 53-21-127(8)(g), MCA.

¶18 In *D.L.B. I, S.G.R.*, and *S.C.* we applied our implied findings doctrine to affirm involuntary commitment and recommitment orders that lacked specific, statutorily required findings of fact where, unlike here, *other written and oral findings* clearly implicated the required statutory findings. *See D.L.B. I*, ¶¶ 18-20, *S.G.R.*, ¶¶ 16-24; and *S.C.*, ¶¶ 12-15. In contrast, in *D.S.*, we reversed an otherwise proper involuntary commitment where the district court's findings of fact were devoid of any express finding, or basis for an implied finding, stating in detail the required factual bases for the court's finding that commitment was necessary under § 53-21-126(1), MCA, or the placement alternatives considered under § 53-21-127(3) and (5), MCA. *D.S.*, ¶¶ 19-21.

¶19 Here, as in *D.S.*, the District Court's express written findings, including the prefatory summary of the evidence and bench findings on the hearing record, are

11

simply devoid of express detailed findings, or bases for implied findings, as required by §§ 53-21-127(8)(b), (c), (d), (f), and -128(1)(d), MCA, as to the treatment alternatives investigated, available, and found not suitable. Also missing are "the reason inpatient treatment was chosen from among other alternatives," whether D.L.B. met the Nursing Care Center admission criteria, and verification that the Center's superintendent had authorized a specific admission date and time in writing as required by § 53-21-127(8)(g), MCA. While nearly all of this detailed information is present and unrebutted in the hearing record,[1] application of our implied findings doctrine to remedy these technical deficiencies in the District Court's written and oral findings of fact would effectively override and disregard the express statutory mandates of §§ 53-21-127(8)(b), (c), (d), (f), (g), and -128(1)(d), MCA. We cannot stretch our implied findings doctrine that far.

## CONCLUSION

¶20    We hold that the District Court's recommitment order does not minimally comply the specific findings requirements of §§ 53-21-127(8)(b), (c), (d), (f), (g), and -128(1)(d), MCA. Therefore, we hereby remand for entry of an amended recommitment order including those required findings.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

---

[1] Except for the Nursing Care Center information required by § 53-21-127(8)(g), MCA.

Justice Laurie McKinnon, specially concurring.

¶21 I agree that the District Court's factual findings are insufficient to satisfy the express requirements of §§ 53-21-127 and -128(1)(d), MCA. However, I do not subscribe to the Court's approval of those cases in which we incorrectly utilize the doctrine of implied findings, specifically *S.G.R.* and *D.L.B. I.* Accordingly, I write separately because the Court continues to acknowledge the reasoning of those cases as valid in its discussion of the doctrine and, further, to clarify the doctrine and explain the limitations of its use, especially within the context of an involuntary commitment proceeding.

¶22 We have actually only utilized the implied findings doctrine in two involuntary commitment proceedings. In the first case, *S.G.R.*, we affirmed the commitment entered by the District Court by assembling an order premised upon the court's statement during trial that S.G.R.'s mental condition "put him at risk." From this utterance, we "grew" the commitment order, articulating in the first instance the statutory basis upon which the commitment was warranted. We chose § 53-21-126(1)(a), MCA, and, as if our stating so made it true, concluded that being "at risk" "clearly impl[ied]" S.G.R. was recommitted because he was "substantially unable to provide for his own basic needs of food, clothing, shelter, health, or safety." We incorrectly utilized the doctrine of implied findings to conclude that express statutory requirements had been met when those requirements instead were required to be made in the first instance by the trial court. We did not "imply" a factual finding which was necessary for an express finding of the court, as the implied findings doctrine allows, we simply made the entire finding(s) ourselves. We did not stop

13

there, but, under the umbrage of the doctrine, went on to formulate the statutory basis upon which S.G.R. should be committed.

¶23 Less than a year later, from the same district court, we considered another recommitment order, which again failed to indicate under which statutory subsection the court determined commitment of the respondent was necessary—§ 53-21-126(1)(a), (b), (c), or (d). *D.L.B. I*, ¶ 8. We combed the transcript to "imply" factual findings *and* conclusions of law and selected from among the four statutory options the subsection which we believed was most rooted in the evidence, making all necessary "implied findings" along the way. In doing so, we made conclusions of law that were absent from the district court's order, but nonetheless required by the statute, and implied all facts expedient to our determination.[1] *D.L.B. I*, ¶ 20. Such a standard of review is novel, in my opinion, and one which I have not had the opportunity to apply myself or, for that matter, observe in other courts. Its utility is completely evident and will undeniably prove useful in this Court's toolbox should we choose, again, to implement a particular result we deem worthwhile.

¶24 In both *S.G.R.* and *D.L.B. I*, we seized upon dicta in *S.C.* when we applied the doctrine of implied findings to create and assemble our trial court order. In *S.C.*, S.C. argued that the district court had not made a *separate* factual finding setting forth why it had determined involuntary medication was necessary. However, in *S.C.* the district court

---

[1] Although we referred to the doctrine of implied findings in *S.M.*, we actually concluded that the oral findings made by the court during the hearing were consistent with the written order. Hence, it was incorrect for the Court to invoke the doctrine as we were merely drawing on all the findings made by the court, both orally and in the written order, to determine that sufficient findings had been made.

made express findings of fact that supported its express conclusion under § 53-21-127, MCA, that involuntary medication was necessary. The district court set forth the following in its findings of fact: (1) S.C. had on two occasions been observed throwing her medication in the garbage can; (2) S.C. had a history of medication non-compliance; (3) S.C. continued to state she did not need medication, even though the prescribed treatment of her mental illness required medication; and (4) S.C.'s mental illness, if left untreated by medication, would result in S.C. or others being placed at risk of harm. Although we found that the district court's "specific findings provide a clear rationale for ordering involuntary medication[,]" we nonetheless noted the doctrine of implied findings adopted by the Court in *Interstate Brands*, which involved a contract dispute and issues of bailment between an armored car service and its customer, added further support for the district court's "abundantly clear" findings of fact regarding involuntary medication. *S.C.*, ¶ 14. In doing so, we opened the door to what can only be characterized as a new and expanding chapter to this Court's jurisdiction.

¶25 I submit that it was unnecessary to mention the implied findings doctrine in *S.C.* and that we did so without careful examination and explanation of the doctrine's applicability in the context of an involuntary commitment proceeding. It is my opinion, or perhaps optimism, that had we carefully considered the doctrine in conjunction with the well-recognized principle that there is to be strict compliance with the involuntary commitment statutes, *In re Mental Health of S.J.*, 231 Mont. 353, 355, 753 P.2d 319, 320 (1988), our decision in *S.G.R.* and *D.L.B. I* would have been different. An examination of the doctrine itself establishes why this is so.

15

¶26 The doctrine has its origins in the rules of civil procedure, currently M. R. Civ. P. 52(6)(c), concerning judgment on partial findings. Rule 52(6)(c) provides that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable *finding* on that issue." (Emphasis added). As early as 1899, we explained that "the present Codes recognize the system of implied findings, and that, under that system, where there are defective findings the judgment appealed from will not be reversed unless requests and exceptions were made and saved." *Haggin v. Saile*, 23 Mont. 375, 380, 59 P. 154, 155 (1899) (citations omitted). We observed in *Haggin* that the doctrine requires "the losing party to take proper steps to except to the defects in the findings of fact, pointing out the particular omissions of which he complains . . . ," or otherwise "he cannot secure a reversal in the defects in the findings filed[.]" *Haggin*, 23 Mont. at 380, 59 P. at 155. Accordingly, the "presumption" is that the "omitted issues necessary to supply the defects in the *findings*" are found in favor of the prevailing party. *Haggin*, 23 Mont. at 380, 59 P. at 155. (citations omitted; emphasis added). *See also Gallagher v. Cornelius*, 23 Mont. 27, 28, 57 P. 447, 448 (1899) ("The defendants complain of the failure of the referee to make express findings on every issue . . . [b]ut it does not appear the defendants requested findings in writing, as is required by Section 1114 of the Code of Civil Procedure.").

¶27 This Court applied the doctrine of implied findings in *Yellowstone Nat'l Bk. v. Gagnon*, 25 Mont. 268, 271, 64 P. 664, 665 (1901), to conclude that, in the absence of the plaintiff either requesting findings or filing exceptions to defective findings, the

16

"presumption obtains that the court impliedly found for the prevailing party upon the issues of fact not covered by the express findings." Unless the party has requested findings or filed objections to defective findings, the "express findings are supplemented by implied findings." *Yellowstone Nat'l Bk.*, 25 Mont. at 271, 64 P. at 665. We also explained in *Crosby v. Robbins*, 56 Mont. 179, 182 P. 122 (1919), that the doctrine of implied findings was not unlimited. We explained:

> [T]he doctrine is limited to cover these cases: (a) if no findings are made, and none requested, it will be presumed that the court found in favor of the prevailing party upon every issue necessary to support the judgment. (b) If the court makes findings which are deficient, but the defects are not pointed out, the presumption will be indulged that the court also found upon other facts in issue sufficient, by supplementing the facts found, to sustain the judgment. It will not be presumed that the court impliedly found facts inconsistent with the express findings.

*Crosby*, 56 Mont. at 193, 182 P. at 125 (citations omitted). Where the court "expressly [finds] every fact necessary to support the judgment . . . , there is no room for the application of the doctrine of implied findings." *Crosby*, 56 Mont. at 193, 182 P. at 125.[2]

Similarly, in *Eskestrand v. Wunder*, 94 Mont. 57, 64, 20 P.2d 622, 624 (1933), this Court determined that a specific finding made by the trial court was "one of fact" and that "any further finding on the subject, necessary, will be implied . . . ," thus acknowledging the doctrine was limited to implied findings of fact, as compared to implied conclusions of law or, as relevant here, implying that specific statutory determinations were made by the court.

---

[2] It is based upon this principle that I would find our adoption in *S.C.* of the doctrine of implied findings was dicta.

¶28     Citing M. R. Civ. P. 52, we reaffirmed these principles in *Poulsen v. Treasure State Indus.*, 192 Mont. 69, 77, 626 P.2d 822, 827 (1981), explaining that "the trial court's judgment is presumed correct, and this Court will draw every legitimate inference to support that presumption." We held that this Court adheres to the "doctrine of implied findings which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence." *Poulsen*, 192 Mont. at 77, 626 P.2d at 827. Accordingly, "[i]n support of the trial court, this Court will engage in the doctrine of implied findings so long as those findings are not inconsistent with express findings made." *Poulsen*, 192 Mont. at 77-78, 626 P.2d at 827.

¶29     In *Poulsen*, we drew on the reasoning of *Boas v. Bank of America Nat. Trust & Savings Ass'n.*, 125 P.2d 620 (Cal. 1942), to explain the doctrine:

> On appeal a reviewing court is entitled to draw necessary inferences from the trial court's express findings in order to support a judgment [citations omitted]; that is to say, where from the facts found and the judgment ordered it is evident in the light of the entire record that if more complete findings had been made they would have been adverse to the contention of the appellant, it will be deemed that such inferences were drawn by the trial court, and in those circumstances the failure so to find is not a ground for the reversal of the judgment. [Citations omitted.] Here fraud was charged; one of the legal grounds upon which the trial court founded its judgment that the agreement was void was that it was obtained by false pretenses; and the evidence shows and the trial court expressly found that the false representations were at all times known to the plaintiff to be false. It follows necessarily that if the trial court had made a finding covering the element of intent to deceive the finding would have been adverse to appellants. Therefore, the absence of a specific finding to that effect does not serve as grounds for reversal. . . .
>
> The issue of fraud constituted one of the principal issues the trial court was called upon to decide, and a great deal of evidence was introduced on that

18

issue. It must be assumed, therefore, that if the trial court did not believe that appellants made the false representations with intent to deceive it would have so found. As said in *Phillips v. Hooper*, 43 Cal. App. 2d 467, [111 P.2d 22], the findings of fact must be taken as embodying the conclusions of the trial court on all questions of fact submitted to it for decision; and no antecedent expressions of the trial judge can in any way restrict his power to declare his final conclusion in the only manner authorized by law, that is, by filing his decision containing his findings of fact and conclusions of law as provided in sections 632 and 633 of the Code of Civil Procedure (citing several cases).

*Boas*, 125 P.2d at 623-24. *See also Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985); *Ballenger v. Tillman*, 133 Mont. 369, 378, 324 P.2d 1045, 1050 (1958); *Crisse v. State Highway Commission*, 147 Mont. 374, 381, 413 P.2d 308, 310, (1966).

¶30   As the foregoing abundantly makes clear, the doctrine of implied findings is a rule of civil procedure that allows judgment to be entered, even though the trial court has made only partial findings, because the judgment made by the trial court can only be maintained with a favorable finding on the particular issue. Although a party may "later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings[,]" M. R. Civ. P. 52(a)(5), where the findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence. Thus, the underlying justification for the doctrine is first, a requirement that error be preserved so that the trial court has an opportunity to correct its omissions; and, second, that a presumption in favor of the trial court implies all of the factual findings necessary to uphold its judgement, provided they do not contradict other express findings and are likewise supported by the evidence.

19

¶31    On appeal, we review a commitment order to determine whether a district court's findings of fact are clearly erroneous. *D.L.B. I*, ¶ 10. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence or if, after review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *S.G.R.*, ¶ 13. Significantly, the doctrine of implied findings is consistent with this standard of review; a finding could not be implied if it were not supported by the evidence. Moreover, an implied finding could not be made to support an express finding if the express finding demonstrated the trial court had misapprehended the effect of the evidence or left this Court with a definite and firm conviction that a mistake had been made. Hence, the doctrine of implied findings acts to presume omitted findings which are consistent and necessary to the express findings already made by the trial court, thereby avoiding reversal of the judgment.

¶32    However, use of the doctrine of implied findings, as its name suggests, is limited to supplementing the findings already made by the trial court. Using the doctrine to make conclusions of law which have been omitted by the trial court or other omitted findings and conclusions specifically required by statute is, therefore, inconsistent with the rationale underlying the doctrine. We review commitment orders to determine whether a district court's conclusions of law are correct. *S.G.R.*, ¶ 13. Whether a district court's findings of fact meet statutory requirements is a question of law that we review for correctness. *S.G.R.*, ¶ 13. Accordingly, we must know what the district court concluded in order to review it and apply the correct standard of review. The doctrine of implied *findings* is of no use when conclusions of law or statutory requirements have been omitted; that is the job of the

20

trial court in rendering its judgment. Where a trial court's conclusion regarding the statutory basis for commitment is completely lacking, we cannot imply the *judgment*, as we did in *D.L.B. I* and *S.G.R.* In other words, as an appellate court we are not permitted to imply from our independent review of the record that the trial court would have made the specific statutory findings and conclusions.

¶33 With regard to the State's power to treat the mentally ill, the Legislature has specifically established the law in Chapter 21 of Title 53, MCA. I agree with the Court as to the specific findings of fact which must be made by the district court under the statute, Opinion, ¶ 10. When the statute requires the district courts to make specific findings, this Court may not imply them from our independent review of the evidence. The district court "shall" state the facts upon which it is requiring commitment. Section 53-21-127(8)(a), MCA. In determining whether a commitment is required, the district court "shall consider" subsections (a) through (d) of § 53-21-126. Section 53-21-126(1), MCA. Indeed, the posttrial disposition ordered by the district court is expressly contingent upon the conclusion made by the court pursuant to § 53-21-126(a) through (d), MCA. *See* § 53-21-127(7), MCA ("If the court relies solely upon the criterion provided in 53-21-126(1)(d), the court may require commitment only to a community facility or program[.]").

¶34 I cannot agree with the Court, to the extent our decision continues to acknowledge incorrectly decided precedent allowing for the assembly and creation of an order which, in the first instance, is committed to the jurisdiction of the District court. I do not agree that use of the doctrine of implied findings to conclude the District Court met express statutory

21

requirements is consistent with the doctrine's rationale. The doctrine has a place in our jurisprudence, but its use is limited—especially within the context of a statutory scheme that requires strict compliance and involuntarily detains a person who is not charged with having committed a crime. It is the job of the trial court to state its facts specially and its conclusions of law separately. M. R. Civ. P. 52. If it fails to do so, it is our job, pursuant to the standard of review, to reverse the judgment of the district court. It is not our job to substitute our own findings and conclusions for the omissions of the trial court, despite how earnestly we may feel the person needs commitment or our compulsion to act as a trier of fact.

¶35 To the extent we perpetuate the validity of our precedent wherein we incorrectly applied the doctrine of implied findings and give lip service to the standards of review, I feel compelled to write separately. In all other respects, I agree with the Court's analysis.


/S/ LAURIE McKINNON

22